I respectfully dissent. *Page 826 
 "In determining how far the federal government may go in controlling intrastate transactions upon the ground that they `affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects. . . . [W]here the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people, and the authority of the State over its domestic concerns would exist only by sufferance of the federal government. . . .
 "The distinction between direct and indirect effects has been clearly recognized in the application of the Anti-Trust Act. Where a combination or conspiracy is formed, with the intent to restrain interstate commerce or to monopolize any part of it, the violation of the statute is clear. But where that intent is absent, and the objectives are limited to intrastate activities, the fact that there may be an indirect effect upon interstate commerce does not subject the parties to the federal statute, notwithstanding its broad provisions. . . .
 ". . . [T]he distinction between direct and indirect effects of intrastate transactions upon interstate commerce must be recognized as a fundamental one, essential to the maintenance of our constitutional system. Otherwise, as we have said, there would be virtually no limit to the federal power and for all practical purposes we should have a completely centralized government. . . .
". . . .
 "It is not the province of the Court to consider the economic advantages or disadvantages of such a centralized system. It is sufficient to say that the Federal Constitution does not provide for it. Our growth and development have called for wide use of the commerce power of the federal government in its control over the expanded activities of interstate commerce, and in protecting that commerce from burdens, interferences, and conspiracies to restrain and monopolize it. But the authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce `among the several States' and the internal concerns of a State."
A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 546-50
(1935) (internal citations omitted and emphasis added).
In the case now before us, the interstate commerce, if any, was separate from the transaction entered by the plaintiffs, the Lewises, themselves. The interstate commerce, if any, was between only Blue Ribbon and Green Tree.
The movement of the money from an Alabama buyer's payment of the purchase price for an Alabama purchase to a location outside Alabama is not interstate commerce according to any of our precedents or United States Supreme Court precedents and certainly not according to the intent of the framers of the Commerce Clause of the United States Constitution. See my special writing in Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759 (Ala. 2000). The plaintiffs before us did not receive an interstate loan or interstate credit life, disability, and property insurance as the plaintiffs did in American General Finance, Inc. v.Branch, 793 So.2d 738 (Ala. 2000), cited by *Page 827 
the main opinion. The plaintiffs before us contracted only to pay their Alabama seller, Blue Ribbon. The assignment by Blue Ribbon to Green Tree was not the plaintiffs' transaction. These distinctions are legitimate and legally significant because of the importance of maintaining the constitutional limits on the intrusive powers of the federal government and the importance of the public policy of Alabama, expressed by our legislature in § 8-1-41(3), Ala. Code 1975, against the specific enforcement of pre-dispute arbitration agreements.